UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| ANDREA BOLANOS GUZMAN                             )  | |
|                                                   )  | |
|                         *Plaintiff*, ) | |
|                                                   )  | |
|                           vs. ) | No. 1:23-cv-01070-JMS-MJD |
|                                                   )  | |
| XTC U.S. XPRESS INC. U.S. INC.                    )  | |
|                                                   )  | |
|                        *Defendant*. ) | |

**ORDER**

Plaintiff Andrea Guzman, who is a Hispanic woman, worked for Defendant XTC U.S. Xpress Inc. U.S. Inc. ("XTC") as a Carrier Procurement Manager. The day after notifying XTC that she was pregnant, XTC terminated her employment. Following Ms. Guzman's termination, she initiated this litigation against XTC, asserting claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII") for gender, pregnancy, and race discrimination; retaliation; and harassment; and claims under 42 U.S.C. §1981 for discrimination. XTC has filed a Partial Motion to Dismiss Count II (a retaliation claim under Title VII), and Counts VI and IX (both discrimination claims under § 1981) for failure to state a claim. [Filing No. 25.] The Motion is now ripe for the Court's consideration.

**I.
STANDARD OF REVIEW**

Under Rule 12(b)(6), a party may move to dismiss a claim that does not state a right to relief. The Federal Rules of Civil Procedure require that a complaint provide the defendant with "fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007)). In reviewing the sufficiency of a complaint, the Court must accept all well-pled facts as true and draw all

1

permissible inferences in favor of the plaintiff. See *Active Disposal Inc. v. City of Darien*, 635 F.3d 883, 886 (7th Cir. 2011). A Rule 12(b)(6) motion to dismiss asks whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). The Court will not accept legal conclusions or conclusory allegations as sufficient to state a claim for relief. See *McCauley v. City of Chicago*, 671 F.3d 611, 617 (7th Cir. 2011). Factual allegations must plausibly state an entitlement to relief "to a degree that rises above the speculative level." *Munson v. Gaetz*, 673 F.3d 630, 633 (7th Cir. 2012). This plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

## II.
### BACKGROUND

The following are the factual allegations set forth in the Complaint, which the Court must accept as true at this time. The following does not encompass the entirety of the Complaint's factual allegations but rather only those facts which bear on the claims at issue.

XTC hired Ms. Guzman in July of 2022. [Filing No. 19 at 1.] She performed her job well. [Filing No. 19 at 2.] During the first week of January 2023, Ms. Guzman "vomited at work" and notified "the Director of Operations that she was sick and asked her if she could work from home." [Filing No. 19 at 2.] Ms. Guzman received a doctor's note excusing her from work for illness and provided it to the Director, but the Director of Operations told Ms. Guzman that she "had to go into the office unless she was dying." [Filing No. 19 at 2.] Around the same time, however, a White male "became sick at work . . . and was excused for the day, without providing a doctor's note." [Filing No. 19 at 2.]

On January 17, 2023, Ms. Guzman informed XTC's Human Resources Department that she was pregnant. [Filing No. 19 at 3.] Ms. Guzman also inquired "about Defendant's maternity leave policy because she wanted to set up a maternity leave plan." [Filing No. 19 at 3.] The following day, XTC terminated Ms. Guzman for "poor performance" despite "great performance reviews." [Filing No. 19 at 3.] XTC did not terminate underperforming White male employees. [Filing No. 19 at 3.]

On February 20, 2023, Ms. Guzman filed a Charge of Discrimination with the Equal Employment Opportunity Commission (the "EEOC" and the "EEOC Charge") alleging race and gender discrimination in violation of Title VII by XTC, stating, in relevant part:

> The first week of January 2023, I threw up at work and a co-worker, Laurie Collins, informed me that if I told XTC that I was pregnant, then I would be terminated. From January 3-4, 2023, I was sick and informed Rachel Morrison that I was sick. I asked her if I could work from home. I provided her a doctor's note that excused me from work. She responded that I had to go into the office, unless I was dying. However, around the same time, Riley Garmin, a Caucasian male, became sick at work and he was excused for the day, without providing a doctor's note.
>
> On January 17, 2023, I called HR and informed her that I was pregnant. She also asked me to provide a doctor's note stating that I was pregnant. On January 18, 2023, when I returned to work, I noticed that I was locked out of my computer and that my company phone no longer worked. Robin Cale called me into her office, where Rachel Morrison was present on phone. Rachel told me that I was terminated due to "poor performance," despite my great performance reviews.

[Filing No. 25-1.] Ms. Guzman then initiated the present litigation, asserting nine Counts:

- Count I – termination based on gender under Title VII;

- Count II – retaliation for engaging in protected activity under Title VII;

- Count III – termination based on race under Title VII;

- Count IV – "terminati[on]" based on pregnancy under Title VII;

- Count V – "discharg[e]" based on pregnancy under Title VII;

3

- Count VI – termination based on race under § 1981;

- Count VII – gender "harass[ment]" under Title VII;

- Count VIII – gender discrimination under Title VII; and

- Count IX – discrimination under § 1981 for "refusing to allow [her] to take time off work due to sickness and due to her race."

[Filing No. 19 at 4-5.] XTC moves to dismiss Counts II, VI, and IX. [Filing No. 25.]

### III.
### DISCUSSION

**A. Retaliation Claim Under Title VII (Count II)**

XTC advances two arguments in opposition to Ms. Guzman's retaliation claim. First, XTC argues that Ms. Guzman failed "to exhaust her administrative remedies" by failing "to check the box indicating that the claims are based on retaliation" and making "no mention of the core concepts of retaliation . . . under Title VII." [Filing No. 26 at 2; Filing No. 26 at 5.] Second, XTC argues that Ms. Guzman did not "plead facts sufficient to establish that she engaged in a protected activity." [Filing No. 26 at 2.]

In response, Ms. Guzman argues that she met the exhaustion requirement because her retaliation claim is "within the scope" and "like or reasonably related" to her EEOC charge. [Filing No. 34 at 7-8.] She asserts that the facts in her EEOC Charge and Complaint "are the exact same." [Filing No. 34 at 9.] She also argues that in support of her retaliation claim, she "clearly stated that she informed [XTC] of her pregnancy and requested information regarding [XTC's] leave policy." [Filing No. 34 at 5-6.]

XTC replies that Ms. Guzman's Complaint is "deficient of any allegation that might suggest protected activity, such as a complaint to management or opposition to discriminatory activities tied to a protected class." [Filing No. 36 at 1.] Further, XTC argues that "to the extent [Ms.

4

Guzman] insinuates that the filing of her Charge somehow supports a retaliation claim, this contention is likewise without merit given that her Charge was filed post-termination." [Filing No. 36 at 2.] XTC also reiterates that she failed to exhaust her retaliation claim because the EEOC Charge "omits any mention whatsoever of [a protected activity]." [Filing No. 36 at 3.]

1. *Exhaustion*

In general, "a Title VII plaintiff cannot bring claims in a lawsuit that were not included in her EEOC Charge." *Teal v. Potter*, 559 F.3d 687, 691 (7th Cir. 2009) (quoting *Cheek v. Western & Southern Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994)). This rule promotes the EEOC's "investigatory and conciliatory role" and provides "the charged party of notice of the charge." *Babrocky v. Jewel Food Co.*, 773 F.2d 857, 863 (7th Cir. 1985). The Seventh Circuit has held that a plaintiff may bring a claim not included in her EEOC Charge if the claim is "reasonably related to the charges actually set forth in the administrative filing." *Delgado v. Merit Systems Protection Board*, 880 F.3d 913, 926 (7th Cir. 2018) (citing *Dear v. Shinseki*, 578 F.3d 605, 608 (7th Cir. 2009)). A claim not explicitly made in the EEOC Charge is reasonably related if it "reasonably could have developed from the EEOC's investigation of the charges before it, meaning that the EEOC Charge and the complaint must describe the same conduct and implicate the same individuals." *Babrocky*, 773 F.2d at 863 (citing *Ezell v. Potter*, 400 F.3d 1041, 1046 (7th Cir. 2005)). The Seventh Circuit has liberally construed this standard because "most EEOC complaints are completed by laypersons." *Taylor v. Western & Southern Life Ins. Co.*, 966 F.2d 1188, 1195 (7th Cir. 1992). This doctrine prevents clerical mistakes from blocking claims and is consistent with the legislative intent of Title VII. *See Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 463 (5th Cir. 1970) ("[W]e decline to hold that the failure to place a check mark in the correct box is a fatal error. In the context of Title VII, no one—not even the unschooled—should be boxed out.");

5

*see also Griggs v. Duke Power Co.*, 401 U.S. 424, 429-30 (1971) ("The objective of Congress in the enactment of Title VII . . . was to achieve equality of employment opportunities and remove barriers that have operated in the past to favor an identifiable group of white employees over other employees.").

Applying this standard of review to Ms. Guzman's EEOC Charge, the Court finds that Ms. Guzman has failed to administratively exhaust her retaliation claim because it is not reasonably related to her EEOC Charge. While Ms. Guzman's EEOC Charge and her Amended Complaint are similar, the only factual allegation that could be construed as a protected activity (reporting her pregnancy and asking about maternity leave policy) is absent from her EEOC Charge. Ms. Guzman's Complaint includes the factual allegation about inquiring about maternity leave, but her EEOC Charge does not. [*Compare* Filing No. 19 *with* Filing No. 25-1.] As a result, Ms. Guzman's EEOC Charge and Complaint do not describe the same conduct, and her retaliation claim could not have reasonably developed from the EEOC's investigation of the charges before it. This omission prevents the EEOC from exhaustively reviewing the incident and XTC from understanding the charges it faces.

The Court's decision is consistent with the Seventh Circuit's rationale for liberally construing EEOC Charges. Clerical errors should not prevent individuals facing discrimination from pursuing remedies under Title VII. But that is not the case here. Ms. Guzman not only failed to check the box for retaliation, but more importantly, she also failed to allege anything resembling retaliation (as opposed to discrimination) under Title VII. This failure is not the type of harm which the Seventh Circuit seeks to guard Title VII claimants from. *See Jenkins v. Blue Cross Mut. Hosp. Ins., Inc.*, 538 F.2d 164, 169 (7th Cir. 1976) (finding that plaintiff administratively exhausted sex discrimination claim despite not checking the appropriate box because plaintiff alleged that

her superior accused her of "being a leader of the girls on the floor"); *see also Lee v. Indiana Dep't of Corr.*, 2002 WL 31455124, at *5 (S.D. Ind. Oct. 30, 2002) (holding that plaintiff administratively exhausted her retaliation claim despite not checking the appropriate box because plaintiff alleged in EEOC Charge that she was terminated after claiming sexual harassment against the defendant).

2. *Protected Activity*

Even if Ms. Guzman had administratively exhausted her retaliation claim, she fails to state a claim because she does not allege that she was engaged in a protected activity, which is an essential element of retaliation under Title VII. Title VII forbids an employer from discriminating against any individual with respect to his or her "compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Title VII also forbids retaliation. *See Luevano v. Wal-Mart Stores, Inc.* 722 F.3d 1014, 1029 (7th Cir. 2013). To plead retaliation under Title VII, "a plaintiff must allege that she engaged in statutorily protected activity and was subjected to adverse employment action as a result of that activity, though she need not use those terms, of course." *Id.* (citations omitted). A protected activity is "some step in opposition to a form of discrimination protected under the statute, and the employee needs only a good-faith and reasonable belief that the conduct she is opposing is unlawful." *Owens v. Old Wis. Sausage Co., Inc.*, 870 F.3d 662, 668 (7th Cir. 2017). Paradigm examples of protected activities include "filing a charge, testifying, assisting or participating in any manner in an investigation, proceeding or hearing under Title VII or other employment statutes; or opposing an unlawful employment practice." *Northington v. H & M Int'l*, 712 F.3d 1062, 1065 (7th Cir. 2013); *see also Tomanovich v. City of Indianapolis*, 457 F.3d 656,

668 (7th Cir. 2006). "Vague and obscure 'complaints' do not constitute protected activity." *Northington*, 712 F.3d at 1065.

Ms. Guzman fails to explicitly identify such a protected activity. She alleges that she "informed Defendant of her pregnancy and requested information regarding Defendant's leave policy." [Filing No. 34 at 6.] She says again that in "Count II (retaliation)[,] . . . [she] was terminated after informing [XTC] of her pregnancy and requesting information regarding [XTC's] leave policy." [Filing No. 34 at 9.] Based on this language, the Court assumes that Ms. Guzman implicitly alleges that her notification of pregnancy and request for information about maternity leave constitutes a "protected activity" for which she faced retaliation.[1] Yet even under the most generous definition, this allegation does not constitute protected activity, and Ms. Guzman neither cites relevant caselaw nor is the Court aware of precedent which suggests otherwise. Inquiring about a company's maternity leave policy certainly does not amount to "opposing a practice made unlawful under Title VII." *Tomanovich*, 457 F.3d at 668.

Further, to the extent that Ms. Guzman insinuates that the filing of her EEOC Charge supports her retaliation claim, XTC is correct that, as a matter of law, a post-termination EEOC Charge is insufficient to support the claim. Although filing an EEOC charge of discrimination can be a protected activity, the employer must be aware of it pre-termination. *Smith v. Lafayette Bank & Trust Co.*, 674 F.3d 655, 658 (7th Cir. 2012) (finding that an EEOC charge filed after the plaintiff was already terminated "doom[ed]" her retaliation claim because the employer was not aware of it before terminating the employee). Here, Mr. Guzman filed her EEOC Charge after

---

[1] In any event, if the alleged protected activity were something else, it is waived for failure to develop it. *See Schaefer v. Universal Scaffolding & Equip., LLC*, 839 F.3d 599, 607 (7th Cir. 2016) ("Perfunctory and undeveloped arguments are waived, as are arguments unsupported by legal authority."); *see also Draper v. Martin*, 664 F.3d 1110, 1114 (7th Cir. 2011) ("[I]t is not this court's responsibility to research and construct the parties' arguments." (cleaned up)).

8

her termination. Accordingly, the Court **GRANTS** XTC's Partial Motion to Dismiss as to Count II.

### B. Race Discrimination Claims Under Section 1981 (Counts VI and IX)

Ms. Guzman alleges that she was terminated due to her race (Count VI) and not allowed to take sick leave due to her race (Count IX), both in violation of § 1981. [Filing No. 19 at 5.] Because both claims are § 1981 discrimination claims and because the parties address the claims together, [*see* Filing No. 26; Filing No. 34; Filing No. 36], the Court addresses them together.

XTC asserts that both claims must be dismissed for the same reasons. First, XTC argues that the claims fail because Ms. Guzman "fail[s] to plead the existence of a contractual relationship between herself and XTC." [Filing No. 26 at 8.] Second, XTC asserts that she fails "to allege that race was the 'but-for' reason" she was treated differently. [Filing No. 26 at 8.] Additionally, as to Count IX only, XTC argues that §1981 only applies to race discrimination and cannot provide relief for Ms. Guzman's alleged discrimination because of "her 'sickness,' gender, or any characteristic other than race." [Filing No. 26 at 8.]

Ms. Guzman responds that she alleged sufficient facts to meet the minimum pleading standard for both claims. [Filing No. 34 at 5-7.] She reiterates the allegations in her Amended Complaint that she contends support her claim that she was terminated due to her race, including her allegation that White employees who performed poorly were not terminated and a White "male was able to take sick leave and was not told . . . to come to work unless [he] was dying." [Filing No. 34 at 6-7.] She also argues that her allegation of employment at XTC is a sufficient contractual relationship under § 1981. [Filing No. 34 at 7.]

In reply, XTC repeats its argument that Ms. Guzman "failed to plead sufficient facts to raise her Section 1981 race discrimination claims above a speculative level." [Filing No. 36 at 4].

42 U.S.C. § 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other." "Contracts" for the purposes of § 1981 include at-will employment contracts. *Walker v. Abbott Lab'ys*, 340 F.3d 471, 476-78 (7th Cir. 2003) (finding that an at-will employment contract is sufficiently contractual in nature to maintain a § 1981 claim for discrimination).

In order to properly allege a claim for employment discrimination under § 1981, "[i]t is enough for a plaintiff to assert that she was treated worse because of protected characteristics." *Graham v. Bd. of Educ.*, 8 F.4th 625, 627 (7th Cir. 2021). The pleadings must include an allegation that, but for race, the plaintiff would not have been treated differently. *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 140 S. Ct. 1009, 1014-15 (2020) (holding that a § 1981 "plaintiff must initially plead" but-for causation). The plaintiff, however, does not need to plead a prima facie case of discrimination:

> Satisfying Rule 8 and the accompanying standards articulated by the Supreme Court in *Twombly* and *Iqbal* does not require a plaintiff to plead a prima facie case of employment discrimination. Put more plainly, a plaintiff need not allege facts aligning with her claim's every element, which [he] will have to prove for [his] claim to survive summary judgment. She certainly does not need to identify—as the district court seems to have suggested—a similarly situated employee who managed to avoid termination.

*Kaminski v. Elite Staffing, Inc.*, 23 F.4th 774, 777 (7th Cir. 2022) (citations omitted).[2]

---

[2] The analysis of a § 1981 claim and a Title VII claim are the same, and cases discussing claims under either provision are instructive. *See Johnson v. Gen. Bd. of Pension & Health Benefits of United Methodist Church*, 733 F.3d 722, 728 (7th Cir. 2013) ("The substantive standards and methods that apply to Title VII also apply to 42 U.S.C. § 1981.").

In moving to dismiss the § 1981 claims, XTC mischaracterizes both of Ms. Guzman's claims and confuses the law.  As a preliminary matter, XTC's argument that Ms. Guzman's claims "fail to make any mention of a contractual relationship" is hypocritical and disingenuous.  Not only does Ms. Guzman clearly allege an employee-employer relationship with XTC ("Plaintiff began working as an employee for [XTC]"), which is sufficient, *see Walker*, 340 F.3d at 478, XTC acknowledges the same in its Brief in Support of Defendant's Partial Motion to Dismiss ("This case involves claims by [Ms. Guzman] against her *former employer*, XTC . . . ."). [Filing No. 19 at 1; Filing No. 26 at 2 (emphasis added).]

Further, XTC's assertion that Ms. Guzman's Section 1981 claims are "not supported by any allegation indicating that her race . . . was a 'but for' cause of her termination" is incorrect. [Filing No. 26 at 3.]  Indeed, "a plaintiff bears the burden of showing that race was a but-for cause of [her] injury.  And, while the materials the plaintiff can rely on to show causation may change as a lawsuit progresses from filing to judgment, the burden itself remains constant." *Comcast Corp.*, 140 S. Ct. at 1014-15.  Here, Ms. Guzman meets this burden in both Count VI and Count IX.  Throughout her Amended Complaint, Ms. Guzman alleges that, because she is Hispanic, she was treated differently (Count VI) and ultimately terminated (Count IX).  She alleges that White co-workers were (1) excused from work when ill despite not having a doctor's note, and (2) not terminated despite poor performance reviews.  [Filing No. 19 at 2-3.]  These are sufficient allegations that, but for being Hispanic, she would not have been treated differently from the White employees.  The cases that XTC cites in support of its argument are inapposite because in those cases, the plaintiffs alleged discriminatory actions yet omitted any factual instances of discrimination.  *See Payne v. Abbott Lab'ys*, 999 F. Supp. 1145, 1152 (N.D. Ill. 1998) (finding that plaintiffs' allegations that they were denied promotional opportunities and equal pay without "specific instances or facts

11

regarding when plaintiffs applied for promotions . . . or other specific adverse employment actions which injured plaintiffs" were conclusory and insufficient to state a claim); *Webb v. AFSCME Council 31*, 2020 WL 919260, at *2 (N.D. Ill. Feb. 26, 2020) (finding that plaintiff's allegation that he was discriminated against because his employer did not respond to his grievances was insufficient when he did not "give context to what grievances he made and how [his employer] reacted to them except that [it] 'refused to respond to his inquiries.'"). But as discussed, Ms. Guzman does allege specific factual instances of discrimination, so these cases do not help XTC.

Lastly, with respect to Count IX the Court agrees with XTC's argument that "sickness is not a protected characteristic under Section 1981." [Filing No. 34 at 5]. Indeed, "some showing of differential treatment on the basis of race is a necessary element of a claim under [Section 1981]." *Rush v. McDonald's Corp.*, 966 F.2d 1104, 1119 (7th Cir. 1992) (citation omitted). But, despite the ambiguous language in her pleading, the Court does not understand Ms. Guzman to be asserting a § 1981 claim based on her sickness. Rather, the Court finds that Count IX alleges that XTC refused to grant Ms. Guzman time off when she was sick because she is Hispanic. The Court's duty to "draw all permissible inferences in favor of the plaintiff" compels its reading of Count IX. *See Active Disposal Inc.*, 635 F.3d at 886. The Court's reading of her claim is bolstered by the fact that she alleges that a White individual was not refused time off when he was sick. Based on this interpretation, she states a claim—she alleges that she was treated worse (not allowed time off when sick) because of her race (Hispanic). But the Court cautions Ms. Guzman that her Count VI § 1981 claim can only be based on race discrimination, and to the extent that she attempts to argue otherwise, her arguments will be disregarded because § 1981 only prohibits discrimination based on race.

In conclusion, XTC seeks to apply summary judgment like standards at the motion to dismiss stage. But Ms. Guzman's allegations are enough at the motion to dismiss stage to sufficiently allege both § 1981 race discrimination claims. *See Graham*, 8 F.4th at 627 (criticizing district court for "want[ing] [plaintiff] to put in the complaint all facts that would be needed to defeat a motion for summary judgment," and noting "that's not the function of a complaint. Even after [*Twombly* and *Iqbal*], a complaint in federal court pleads claims, not facts. A claim must be plausible, but it need not supply the specifics required at the summary-judgment stage."). Accordingly, the Court **DENIES** XTC's Partial Motion to Dismiss as to both Count VI and Count IX.

## IV.
### CONCLUSION

For the foregoing reasons, the Court:

- **GRANTS** XTC's Partial Motion to Dismiss as to Count II, [25]; and
- **DENIES** XTC's Partial Motion to Dismiss as to Counts VI and IX, [25].

No partial final judgment shall issue at this time.

Date: 2/20/2024

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record**